1

**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire (SBN 242352)

2

esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)

3

rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900

4

Beverly Hills, CA 90212
Phone: (877) 534-2590

5

Facsimile: (310) 247-0160

6

*Attorneys for Plaintiff*

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

10

| | |
|---|---|
| JOSHUA DYSON, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Breach of Fiduciary Duties |
| FIVE PRIME THERAPEUTICS, INC., WILLIAM R. RINGO, FRANKLIN M. BERGER, KAPIL DHINGRA, PEDER K. JENSEN, GARRY NICHOLSON, CAROL SCHAFER, LORI LYONS-WILLIAMS, and THOMAS CIVIK, | (2)  Aiding and Abetting Breach of Fiduciary Duties |
| | (3)  Violation of § 14 (e) of the Securities Exchange Act of 1934 |
| | (4)  Violation of § 14 (d) of the Securities Exchange Act of 1934 |
| Defendants. | (5)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |

Plaintiff, Joshua Dyson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this action against Five Prime Therapeutics, Inc. ("Five Prime" or the "Company"), and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with Five Prime and the Individual Defendants, the "Defendants"), for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Amgen Inc.

- 1 -
COMPLAINT

("Parent"), and Franklin Acquisition Sub, Inc. ("Merger Sub," and together with Parent, "Amgen") as a result of an unfair process for an unfair price, and to enjoin an upcoming tender offer on a proposed all-cash transaction valued at approximately $1.9 billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 4, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, Five Prime will become an indirect wholly-owned subsidiary of Amgen, and Five Prime stockholders will receive $38.00 in cash for each share of Five Prime common stock they own.  As a result of the Proposed Transaction, Plaintiff as a Five Prime stockholder will be frozen out of any interest in the surviving entity.

3.      Thereafter, on March 18, 2021, Five Prime filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process in which the Board failed to create an independent committee of disinterested directors to run the sales process.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Five Prime without first taking steps to ensure that Plaintiff as a public stockholder of Five Prime would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or the Amgen without regard for Plaintiff and Five Prime's public stockholders.   Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff.

6. Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

7. In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed the materially deficient Recommendation Statement on March 18, 2021 with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Five Prime shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in breach of the Defendants' fiduciary duties. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Five Prime, provided by Five Prime to the Company's financial advisor Lazard Frères & Co. LLC ("Lazard"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Lazard and provides to the Company and the Board.

8. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff.

9. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## PARTIES

10.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a Five Prime stockholder.

11.     Defendant Five Prime, a clinical-stage biotechnology company, focuses on the discovery and development of innovative protein therapeutics.  Five Prime is incorporated under the laws of the State of Delaware and has its principal place of business at 111 Oyster Point Boulevard, South San Francisco, CA 94080.  Shares of Five Prime common stock are traded on the NasdaqGS under the symbol "FPRX."

12.     Defendant William R. Ringo ("Ringo") has been a Director of the Company at all relevant times.  In addition, Ringo serves as the Company's Chairman of the Board.

13.     Defendant Franklin M. Berger ("Berger") has been a director of the Company at all relevant times.

14.     Defendant Kapil Dhingra ("Dhingra") has been a director of the Company at all relevant times.

15.     Defendant Peder K. Jensen ("Jensen") has been a director of the Company at all relevant times.

16.     Defendant Garry Nicholson ("Nicholson") has been a director of the Company at all relevant times.

17.     Defendant Carol Schafer ("Schafer") has been a director of the Company at all relevant times.

18.     Defendant Lori Lyons-Williams ("Lyons-Williams") has been a director of the Company at all relevant times.

19.     Defendant Thomas Civik ("Civik") has been a director of the Company at all relevant times. In addition, Civik serves as the Company's Chief Executive Officer ("CEO") and President.

20.     Defendants identified in ¶¶ 12 - 19 are collectively referred to as the "Individual Defendants."

21.     Non-Defendant Amgen is an American multinational pharmaceutical company headquartered in Thousand Oaks, California.  Amgen's common stock is traded on the NasdaqGS under the symbol "AMGN".

22.     Non-Defendant Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Five Prime maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

26.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Five Prime and owe the Company the duties of due care, loyalty, and good faith.

27.     By virtue of their positions as directors and/or officers of Five Prime, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Five Prime to engage in the practices complained of herein.

COMPLAINT

28.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the Company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the Company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f.  disclose to the Company all information and documents relating to the Company's affairs that they received by virtue of their positions in the Company.

29.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Five Prime, are obligated to refrain from:

a.     participating in any transaction where the directors' or officers' loyalties are divided;

b.     participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders, including Plaintiff; and/or

c.     unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders, including Plaintiff.

COMPLAINT

30.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Five Prime, Plaintiff, including their duties of loyalty, good faith, and due care.

31.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for his Five Prime common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### Company Background

32.     Five Prime is a clinical-stage biotechnology company, focused on the discovery and development of innovative protein therapeutics.

33.     The Company's product candidates are Bemarituzumab, an antibody that inhibits fibroblast growth factor receptor 2b, or FGFR2b, which is in Phase 3 clinical trials to treat patients with gastric or gastroesophageal junction and GEJ cancer; and FPA150, a CD8 T cell checkpoint inhibitor antibody that is in Phase 1a/1b clinical trial that targets B7-H4 in various cancers, as well as FPT155, a soluble CD80 fusion protein, which is in Phase 1a/1b clinical trial that enhances co-stimulation of T cells through CD28. Its product candidates also include Cabiralizumab, an antibody that inhibits colony stimulating factor-1 receptor that is in Phase Ia/Ib clinical trials for the treatment of various cancers in combination with Opdivo. The Company's BMS-986258, an anti-T cell immunoglobulin and mucin domain-3 antibody, which is in Phase 1/2 clinical trial as a single agent and in combination with Opdivo in patients with advanced malignant tumors.

34.     Five Prime has license and collaboration agreements with Bristol-Myers Squibb Company, GlaxoSmithKline LLC, INBRX 110 LP, UCB Pharma S.A., and Zai Lab (Shanghai) Co., Ltd.; and license agreements with Galaxy Biotech, LLC, BioWa, Inc. and Lonza Sales AG.

35.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated anticipated positive data from the Company's timeline.  For example, in a November 3, 2020 press release announcing its 2020 Q3 financial results, CEO Defendant Civik described the Company's raised expectation, "'We look forward to achieving three milestones before the end of the year that will inform future

development of our pipeline. Before year end, we expect to report top-line data from the FIGHT Phase 2 trial in front-line gastric cancer. We also expect to have enough FPT155 monotherapy data to inform next steps for the program, and we will present the first data set from our anti-CCR8 program at the upcoming SITC annual meeting. The Five Prime team has done an excellent job advancing our clinical and research programs despite the many challenges we have all confronted this year.'"

36.     The positive outlook and expectations are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Five Prime.  Clearly, the Company is likely to have future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

37.     Despite this potential, the Individual Defendants have caused Five Prime to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

38.     As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible no matter the price.

39.     Notably, the Recommendation Statement does not indicate that a committee of independent, outside directors was created to run the sales process.

40.     In addition, the Recommendation Statement is silent as to the nature of the various confidentiality agreements entered into between the Company and potentially interested third parties throughout the sales process, including Amgen, whether these agreements differ from each other, and if so in what way, including failing to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Amgen, would fall away.

41.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner

***The Proposed Transaction***

42.     On March 4, 2021, Amgen and Five Prime issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> THOUSAND OAKS, Calif. and SOUTH SAN FRANCISCO, Calif., March 4, 2021 – Amgen (NASDAQ: AMGN) and Five Prime Therapeutics (NASDAQ: FPRX), a clinical-stage biotechnology company focused on developing immuno-oncology and targeted cancer therapies, today announced an agreement under which Amgen will acquire Five Prime Therapeutics for $38.00 per share in cash, representing an equity value of approximately $1.9 billion. This acquisition adds Five Prime's innovative pipeline to Amgen's leading oncology portfolio.
>
> - Five Prime's lead asset, bemarituzumab, is a first-in-class, Phase 3 ready anti-FGFR2b antibody with positive data from a randomized, placebo-controlled Phase 2 study in frontline advanced gastric or gastroesophageal junction (GEJ) cancer. Bemarituzumab targets FGFR2b, which has been found to be overexpressed in approximately 30% of patients with non-HER2 positive gastric cancer, as well as other solid tumors.
>
> - The bemarituzumab Phase 2 FIGHT trial demonstrated clinically meaningful improvements in progression-free survival (PFS), overall survival (OS) and overall response rate (ORR) in the frontline treatment of patients with advanced gastric or GEJ cancer. Additional analysis showed a positive correlation between efficacy and expression of FGFR2b on tumor cells, confirming both the importance of the FGFR2b target and the activity of bemarituzumab against this target.
>
> - This correlation suggests that FGFR2b could play a role in other epithelial cancers, including lung, breast, ovarian and other cancers.
>
> - The acquisition of Five Prime also supports Amgen's international expansion strategy. Gastric cancer is one of the world's most common forms of cancer and is particularly prevalent in the Asia-Pacific region, where Amgen expects to generate significant volume growth in the coming years. Amgen plans to leverage its presence in Japan and other Asia-Pacific markets to maximize bemarituzumab's potential. In addition, as part of this transaction, Amgen will receive a royalty percentage on future net sales in Greater China ranging from the high teens to the low twenties from a pre-existing co-development and commercialization agreement between Five Prime and Zai Lab (Shanghai) Co., Ltd.

- Five Prime's additional innovative pipeline programs complement Amgen's efforts to bring meaningful therapies to oncology patients.

"The acquisition of Five Prime offers a compelling opportunity for Amgen to strengthen our oncology portfolio with a promising late-stage, first-in-class global asset to treat gastric cancer," said Robert A. Bradway, chairman and chief executive officer at Amgen. "We look forward to welcoming the Five Prime team to Amgen and working with them to leverage our best-in-class monoclonal antibody manufacturing capabilities to supply additional clinical materials, as well as expanded production quantities, to realize the full potential of bemarituzumab for even more patients around the world as quickly as possible."

"This is an exciting day for patients who may one day benefit from the promise of bemarituzumab and our full pipeline. I'm so proud of the Five Prime team and the science we've pioneered," said Tom Civik, president and chief executive officer of Five Prime. "We see tremendous complementarity between the two companies. Amgen has global reach, world-class resources, and they share our deep passion for science and commitment to patients. I have full confidence that Amgen is the right company to work with us to bring our innovative cancer treatments to patients and to achieve our mission to rewrite cancer."

**Transaction Terms**

Under the terms of the merger agreement, which was approved by the Boards of Directors of both companies, Amgen will commence a tender offer to acquire all of the outstanding shares of Five Prime's common stock for $38.00 per share in cash. Following the completion of the tender offer, a wholly-owned subsidiary of Amgen will merge with Five Prime and shares of Five Prime that have not been tendered and purchased in the tender offer will be converted into the right to receive the same price per share in cash as paid in the tender offer (other than shares held by stockholders who properly demand and perfect appraisal rights under Delaware law).

The transaction is expected to close by the end of the second quarter and is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Five Prime's common stock and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

Amgen reaffirmed its full-year outlook with Revenue guidance of $25.8 to $26.6 billion and non-GAAP EPS guidance of $16.00-$17.00.

COMPLAINT

1    *The Inadequate Merger Consideration*

2        43.    Significantly, the Company's financial prospects and opportunities for future

3    growth, and synergies with Amgen establish the inadequacy of the merger consideration.

4        44.    First, the compensation afforded under the Proposed Transaction to Plaintiff and

5    Company stockholders significantly undervalues the Company.  The proposed valuation does not

6    adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately

7    take into consideration the Company's potential financial success if its pipeline treatments

8    eventually change the way gastric and gastroesophageal junction cancers are treated worldwide.

9        45.    Notably, a March 4, 2021 *Fierce Biotech* article covered Five Prime and Amgen's

10   plans for Five Prime's existing pipeline, "That drug, bemarituzumab, has been through a phase 2

11   trial as a front-line treatment in patients with advanced gastric and gastroesophageal junction

12   cancers, with make-or-break data out last November. The readout broke down like this:

13   Investigators enrolled 155 people with FGFR2b-positive tumors, a subpopulation that accounts for

14   30% of all non-HER2-positive patients, and randomized them to receive bemarituzumab or

15   placebo on top of chemotherapy. The trial cleared the pre-specified bar for statistical significance

16   against all three efficacy endpoints, although the p-values were higher than the 0.05 that typically

17   serves as the cutoff for effectiveness. Progression-free survival in patients who received

18   bemarituzumab on top of chemotherapy was 9.5 months, more than two months longer than the

19   figure in the control arm… But the data, as complex as they were, still saw its shares jump on the

20   readout in November last year by 300%, and made it an attractive buyout option for a big

21   company."

22       46.    The *Fierce Biotech* article continued on gastric cancer and the combined company's

23   role in utilizing Five Prime's pipeline, "Gastric cancer is the third most-common cause of cancer

24   death globally, and patients have suffered from a dearth of new drugs. It is now more than a decade

25   since the FDA approved a new front-line treatment, and chemotherapy remains the standard of

26   care for most HER2-negative patients. Five Prime and now Amgen want to change that and will

27   prep for phase 3 trials. Five Prime also believes FGFR2b 'could play a role in other epithelial

28

cancers, including lung, breast, ovarian and other cancers,' indicating attempts at a broader plan for the drug. Amgen will get its earlier pipeline work as well, which includes one phase 1 CD80-Fc fusion asset and several other preclinical drugs. 'The acquisition of Five Prime offers a compelling opportunity for Amgen to strengthen our oncology portfolio with a promising late-stage, first-in-class global asset to treat gastric cancer,' said Robert Bradway, chairman and CEO at Amgen."

47.    Finally, the Proposed Transaction represents a significant synergistic benefit to Amgen, which operates in the same industry as Five Prime, and will use the new assets, operational capabilities, and brand capital to bolster its own position in the market.

48.    Specifically, Amgen capitalized on Five Prime and its oncology pipeline, as described in the *Reuters* March 4, 2021 article on the Proposed Transaction, "Amgen has been looking to grow in the oncology market in the region since gaining a toehold in China in 2019 through a 20.5% stake in cancer drugmaker BeiGene Ltd for nearly $3 billion. It expects the region to contribute about a quarter of its growth over the next 9-10 years. Through the latest deal, Amgen will get access to Five Prime's lead drug candidate, bemarituzumab, which is ready to enter a late-stage study for treating advanced gastric cancer. 'While gastric cancer may be a small market in the United States, it could provide a significant opportunity in Asia,' Truist Securities analyst Robyn Karnauskas said. Amgen will also get a royalty share on future sales of bemarituzumab in China, where Five Prime has a marketing and development deal with Zai Lab Ltd."

49.    Clearly, while the deal will be beneficial to Amgen, it comes at great expense to Plaintiff as a public stockholder of the Company.

50.    Moreover, post-closure, Plaintiff will be frozen out of any future benefit from his investment in Five Prime's bright future.

51.    It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Amgen at the expense of Plaintiff.

1    *Preclusive Deal Mechanisms*

2         52.    The Merger Agreement contains certain provisions that unduly benefit Amgen by

3    making an alternative transaction either prohibitively expensive or otherwise impossible.

4    Significantly, the Merger Agreement contains a termination fee provision that is especially

5    onerous.  Notably, in the event of termination, the merger agreement requires Five Prime to pay

6    up to approximately $76 million to Amgen, if the Merger Agreement is terminated under certain

7    circumstances.  Moreover, under one circumstance, Five Prime must pay this termination fee even

8    if it consummates any competing company Acquisition Proposal (as defined in the Merger

9    Agreement) *within 12 months following the termination* of the Merger Agreement.  The

10   termination fee will make the Company that much more expensive to acquire for potential

11   purchasers.  The termination fee in combination with other preclusive deal protection devices will

12   all but ensure that no competing offer will be forthcoming.

13        53.    The Merger Agreement also contains a "No Solicitation" provision that restricts

14   Five Prime from considering alternative acquisition proposals by, *inter alia*, constraining Five

15   Prime's ability to solicit or communicate with potential acquirers or consider their proposals.

16   Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating,

17   proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited

18   bona fide written *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a

19   "*Superior Offer*" as defined in the Merger Agreement.

20        54.    Moreover, the Merger Agreement further reduces the possibility of a topping offer

21   from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Amgen

22   information in order to match any other offer, thus providing Amgen access to the unsolicited

23   bidder's financial information and giving Amgen the ability to top the superior offer.  Thus, a rival

24   bidder is not likely to emerge with the cards stacked so much in favor of Amgen.

25        55.    These provisions, individually and collectively, materially and improperly impede

26   the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and

27

28

COMPLAINT

pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders, including Plaintiff.

56.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

*Potential Conflicts of Interest*

57.     The breakdown of the benefits of the deal indicate that Five Prime insiders are the primary beneficiaries of the Proposed Transaction, not Plaintiff and the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Five Prime.

58.     Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.

59.     Moreover, upon the consummation of the Proposed Transaction, the Recommendation Statement indicates that each outstanding Company stock option or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement.

60.     These significant payments to Company insiders, disparate Plaintiff, that will result from the consummation of the Proposed Transaction, will be paid as follows:

| Name | Number of Shares Underlying Company Options[1] | Number of Shares Underlying Vested Company Options[2] | Number of Shares Underlying Unvested Company Options[3] | Company Option Exercise Price ($) | Closing Amount Payable for In the Money Company Options ($)[4] | Number of Shares Underlying Restricted Stock Awards[5] | Amount Payable for Restricted Stock Awards ($)[6] | Total Value ($)[7] |
|---|---|---|---|---|---|---|---|---|
| Thomas Civik | 480,000 | — | 480,000 | 2.72 | 16,934,400 | — | — | 16,934,400 |
| | — | | | | | 75,000 | 2,850,000 | 2,850,000 |
| Helen Collins, M.D. | 180,000 | 45,000 | 135,000 | 5.25 | 5,895,000 | — | — | 5,895,000 |
| | 20,000 | 7,500 | 12,500 | 5.78 | 644,400 | — | — | 644,400 |
| | 58,000 | 29,000 | 29,000 | 11.97 | 1,509,740 | — | — | 1,509,740 |
| | 50,000 | 37,500 | 12,500 | 18.69 | 965,500 | — | — | 965,500 |

COMPLAINT

| Name | | | | | | | | |
| --- | ---: | ---: | ---: | ---: | ---: | ---: | ---: | ---: |
| | 22,500 | 22,031 | 469 | 39.21 | — | | | — |
| | 9,000 | 9,000 | — | 45.38 | — | | | — |
| | 60,000 | 60,000 | — | 37.89 | 6,600 | | | 6,600 |
| | — | — | — | — | — | 20,000 | 760,000 | 760,000 |
| | — | — | — | — | — | 3,334 | 126,692 | 126,692 |
| | — | — | — | — | — | 66,000 | 2,508,000 | 2,508,000 |
| | — | — | — | — | — | 3,334 | 126,692 | 126,692 |
| Francis Sarena | 180,000 | 45,000 | 135,000 | 5.25 | 5,895,000 | — | — | 5,895,000 |
| | 58,000 | 29,000 | 29,000 | 11.97 | 1,509,740 | — | — | 1,509,740 |
| | 45,000 | 33,750 | 11,250 | 18.69 | 868,950 | — | — | 868,950 |
| | 45,000 | 45,000 | — | 45.38 | — | — | — | — |
| | 35,000 | 35,000 | — | 49.54 | — | — | — | — |
| | 60,000 | 60,000 | — | 43.71 | — | — | — | — |
| | 75,000 | 75,000 | — | 19.25 | 1,406,250 | — | — | 1,406,250 |
| | 25,521 | 25,521 | — | 11.14 | 685,494 | — | — | 685,494 |
| | 3,209 | 3,209 | — | 10.77 | 87,381 | — | — | 87,381 |
| | 12,063 | 12,063 | — | 7.26 | 370,817 | — | — | 370,817 |
| | 9,142 | 9,142 | — | 5.54 | 296,749 | — | — | 296,749 |
| | 4,747 | 4,747 | — | 8.49 | 140,084 | — | — | 140,084 |
| | — | — | — | — | — | 20,000 | 760,000 | 760,000 |
| | — | — | — | — | — | 66,000 | 2,508,000 | 2,508,000 |
| | — | — | — | — | — | 3,334 | 126,692 | 126,692 |
| David V. Smith | 180,000 | 45,000 | 135,000 | 5.25 | 5,895,000 | — | — | 5,895,000 |
| | 185,000 | 104,062 | 80,938 | 12.47 | 4,723,050 | — | — | 4,723,050 |
| | — | — | — | — | — | 20,000 | 760,000 | 760,000 |
| | — | — | — | — | — | 66,000 | 2,508,000 | 2,508,000 |
| | — | — | — | — | — | 13,334 | 506,692 | 506,692 |
| William R. Ringo | 27,769 | 27,769 | — | 4.47 | 931,095 | — | — | 931,095 |
| | 52,408 | 52,408 | — | 2.80 | 1,844,762 | — | — | 1,844,762 |
| | 37,998 | 37,998 | — | 5.23 | 1,245,194 | — | — | 1,245,194 |
| | 40,868 | 40,868 | — | 5.31 | 1,335,975 | — | — | 1,335,975 |
| | 49,552 | 49,552 | — | 3.94 | 1,687,741 | — | — | 1,687,741 |
| | 50,367 | 50,367 | — | 3.23 | 1,751,261 | — | — | 1,751,261 |
| | 46,939 | 46,939 | — | 3.99 | 1,596,395 | — | — | 1,596,395 |
| | 34,451 | 34,451 | — | 3.79 | 1,178,569 | — | — | 1,178,569 |
| | 15,000 | 15,000 | — | 6.09 | 478,650 | — | — | 478,650 |
| | 10,000 | 10,000 | — | 17.27 | 207,300 | — | — | 207,300 |
| | 10,000 | 10,000 | — | 29.80 | 82,000 | — | — | 82,000 |
| | 10,000 | 10,000 | — | 42.25 | — | — | — | — |
| | 12,500 | 12,500 | — | 22.15 | 198,125 | — | — | 198,125 |
| | 16,600 | 16,600 | — | 11.65 | 437,410 | — | — | 437,410 |
| Franklin M. Berger, CFA | 20,000 | — | 20,000 | 4.14 | 677,200 | — | — | 677,200 |
| | 15,000 | 15,000 | — | 6.09 | 478,650 | — | — | 478,650 |
| | 10,000 | 10,000 | — | 17.27 | 207,300 | — | — | 207,300 |
| | 10,000 | 10,000 | — | 29.80 | 82,000 | — | — | 82,000 |
| | 10,000 | 10,000 | — | 42.25 | — | — | — | — |
| | 12,500 | 12,500 | — | 22.15 | 198,125 | — | — | 198,125 |
| Kapil Dhingra, M.B.B.S. | 20,000 | — | 20,000 | 4.14 | 677,200 | — | — | 677,200 |
| | 15,000 | 15,000 | — | 6.09 | 478,650 | — | — | 478,650 |
| | 10,000 | 10,000 | — | 17.27 | 207,300 | — | — | 207,300 |
| | 10,000 | 10,000 | — | 29.80 | 82,000 | — | — | 82,000 |
| | 10,000 | 10,000 | — | 42.25 | — | — | — | — |
| | 25,000 | 25,000 | — | 37.99 | 250 | — | — | 250 |
| Peder K. Jensen, M.D. | 20,000 | — | 20,000 | 4.14 | 677,200 | — | — | 677,200 |
| | 15,000 | 15,000 | — | 6.09 | 478,650 | — | — | 478,650 |
| | 10,000 | 10,000 | — | 17.27 | 207,300 | — | — | 207,300 |
| | 10,000 | 10,000 | — | 29.80 | 82,000 | — | — | 82,000 |
| | 10,000 | 10,000 | — | 42.25 | | | | |

COMPLAINT

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12,500 | 12,500 | — | 22.15 | 198,125 | — | — | 198,125 |
| 12,500 | 12,500 | — | 12.70 | 316,250 | — | — | 316,250 |

**Lori Lyons-Williams**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20,000 | — | 20,000 | 4.14 | 677,200 | — | — | 677,200 |
| 25,000 | 8,333 | 16,667 | 6.30 | 792,500 | — | — | 792,500 |

**Garry Nicholson**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20,000 | — | 20,000 | 4.14 | 677,200 | — | — | 677,200 |
| 15,000 | 15,000 | — | 6.09 | 478,650 | — | — | 478,650 |
| 10,000 | 10,000 | — | 17.27 | 207,300 | — | — | 207,300 |
| 15,000 | 15,000 | — | 29.80 | 123,000 | — | — | 123,000 |

**Carol Schafer**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20,000 | — | 20,000 | 4.14 | 677,200 | — | — | 677,200 |
| 1,250 | 1,250 | — | 6.09 | 39,888 | — | — | 39,888 |
| 25,000 | 8,333 | 16,667 | 9.17 | 720,750 | — | — | 720,750 |

61.     Certain employment agreements with certain Five Prime executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Five Prime's common stockholders such as Plaintiff and will be paid out as follows:

| Name[1] | Cash ($)[2] | Equity ($)[3] | Perquisites/ Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Thomas Civik | 2,152,723 | 19,375,120 | 64,003 | 21,591,846 |
| Helen Collins, M.D. | 1,134,213 | 10,534,124 | — | 11,668,337 |
| Francis Sarena | 1,146,011 | 9,691,535 | 32,540 | 10,870,086 |
| William R. Ringo[5] | — | — | — | — |

62.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to Plaintiff as a Company stockholder. This information is necessary to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

63.     Thus, while the Proposed Transaction is not in the best interests of Five Prime Plaintiff, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

64.     On March 18, 2021, the Five Prime Board and Amgen caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement that, in violation their

fiduciary duties, failed to provide Plaintiff in his capacity as a company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to the Company's stockholders such as Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

65.     Specifically, the Recommendation Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Recommendation Statement fails to disclose

a. The specific reasoning committee of independent outside directors was created to run the sales process;

b. Whether the terms of any confidentiality agreements entered during the sales process between Five Prime on the one hand, and any other third party, including Amgen, on the other hand, differed from one another, and if so, in what way;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Amgen, would fall away;

d. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides

illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

*Omissions and/or Material Misrepresentations Concerning Five Prime's Financial Projections*

66. The Recommendation Statement fails to provide material information concerning financial projections provided by Five Prime management and relied upon by Lazard in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

67. The Recommendation Statement indicates that in connection with the rendering of their fairness opinions, Lazard reviewed "various financial forecasts and other data provided to it by Five Prime relating to the business of Five Prime."

68. Accordingly, the Recommendation Statement should have, but fails to provide, certain information in the projections that Five Prime management provided to the Board and Lazard. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

69. With respect to the "Five Prime Management Projections," the Recommendation Statement fails to provide material information concerning the financial projections prepared by Five Prime management.

70. Specifically, the Recommendation Statement fails to disclose all material line items for the metrics of:

    a. Total Revenue, including the underlying metrics of and/or adjustments for: net product sales in addition to partnership payments, including upfront payment, development and commercial milestones and royalties for the Company's partnered assets;

      b.   Gross Profit, including the specific adjustments made to the unadjusted metrics, as well as the specific inputs and assumptions used to make said adjustments;

      c.   EBIT, including all underlying metrics, and the specific adjustments made to the unadjusted metrics, as well as the specific inputs and assumptions used to make said adjustments; and

      d.   Unlevered Free Cash Flow, including the underlying metrics of: income taxes, net of projected impact of net operating losses, depreciation and amortization, changes in net working capital, and capital expenditures.

71.    The Recommendation Statement also provides non-GAAP financial metrics, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

72.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

73.    Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Lazard's financial analyses, or make an informed decision whether to tender their Company stock in favor of the Proposed Transaction. As such, the Board has breached their fiduciary duties by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Lazard*

74.    In the Recommendation Statement, Lazard describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

75.   With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

     a.  The range of enterprise values for Five Prime calculated;

     b.  The specific inputs and assumptions used to determine the discount rate range of 10.0% to 12.0% utilized;

     c.  Five Prime's weighted average cost of capital;

     d.  The range of Five Prime's terminal values utilized;

     e.  The specific inputs and assumptions used to determine the negative terminal growth rage range of (50%) – (10%) utilized;

     f.  Five Prime's estimated net cash as of December 31, 2020; and

     g.  The number of fully diluted shares of Five Prime as of March 2, 2021.

76.   With respect to the *Selected Public Companies Analysis*, the Recommendation Statement fails to disclose the following:

     a.  The specific metrics for all compared companies; and

     b.  The specific inputs and assumptions used to select the applied range of multiples of estimated EV/Probability Adjusted FY+5 Revenue of 2.3x and 4.4x.

77.   With respect to the *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the following:

     a.  The date on which each selected precedent transaction closed;

     b.  The value of each selected precedent transaction;

     c.  The specific inputs and assumptions used to select the applied range of multiples of estimated TV/Probability Adjusted FY+5 Revenue of 5.0x and 7.6x;

     d.   The estimated total cash outstanding as of December 31, 2020 for the Company; and

     e.   The estimated net debt as of December 31, 2020 for the Company.

78.     With respect to the *Premia Paid Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The specific inputs and assumptions used to select the applied range of 25th percentile and 75th percentile 30-day VWAP premia for the selected companies of approximately 55% and 115%, respectively, to the 30-day VWAP of the Shares to calculate an implied equity value per Share range of $29.25 to $40.60 and applied the 25th percentile and 75th percentile 52-week intraday high premia for the selected companies of approximately 0% and 45%, respectively;

79.     With respect to the *Research Analyst Price Targets Analysis*, the Recommendation Statement fails to disclose the following:

     a.   The price targets utilized; and

     b.   The identity of the analysts utilized.

80.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

81.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a public Five Prime stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Five Prime stockholder.  As such, the Board has breached their fiduciary duties by failing to include such information in the Recommendation Statement.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

82.     Plaintiff repeats all previous allegations as if set forth in full herein.

83.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff.

84.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in Five Prime.

85.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to Plaintiff by entering into the Proposed Transaction through a flawed and unfair process and failing to meet their obligations to make complete and accurate disclosures regarding this process and the data and analyses underlying the Proposed Transaction.

86.     Indeed, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff all material information necessary for him to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

87.     The Individual Defendants dominate and control the business and corporate affairs of Five Prime, and are in possession of private corporate information concerning Five Prime's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value without the disclosure of all proper material information.

88.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

89.     As a result of the actions of the Individual Defendants, Plaintiff will suffer irreparable injury in that he has not and will be able to make an informed decision with respect to the Proposed Transaction.

90.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of the Plaintiff.

91.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### Against Defendant Five Prime

92.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

93.     Defendant Five Prime, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

94.     As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from being able to make an informed decision with respect to the Proposed Transaction.

95.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

96.     Plaintiff repeats all previous allegations as if set forth in full herein.

97.     Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

98.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

99.     The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

100.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

101.    The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

102.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

103.    Plaintiff has no adequate remedy at law.

**FOURTH COUNT**

**Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9**

**(Against All Defendants)**

104.    Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

105.    Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

106.    Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

107.    SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

108.    Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

109.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

110.    Plaintiff has no adequate remedy at law

### FIFTH COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

111.    Plaintiff repeats all previous allegations as if set forth in full herein.

112.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Company stockholders.

113.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Recommendation Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

114.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Five Prime's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders, including Plaintiff, and that the Recommendation Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

115.    The Individual Defendants acted as controlling persons of Five Prime within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Five Prime to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Five Prime and all of its employees.  As alleged above, Five Prime is a primary violator of Section 14 of the Exchange Act

and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 22, 2021

**BRODSKY & SMITH, LLC**

By: _____

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone:  (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*